UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMMY JO WRATH-SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. CV-12-0472-JTR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 16, 17. Attorney Maureen J. Rosette represents Tammy Jo Wrath-Smith (Plaintiff); Special Assistant United States Attorney Kathy Reif represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for a period of disability, Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in November 2010, alleging disability since August 1, 2008, due to "[b]ack injury, car accident 2005, bronchitis and pneumonia, obesity, read and write at about 4th grade level,

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

borderline intellectual functioning, [and] mental." Tr. 176, 205. Plaintiff later amended her onset date of disability to February 1, 2009. Tr. 50. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Moira Ausems held a hearing on August 23, 2011, Tr. 43-76, and issued an unfavorable decision on October 28, 2011, Tr. 20-32. The Appeals Council denied review on May 25, 2012. Tr. 1-6. The ALJ's August 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 16, 2012. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on July 12, 1968, and was 40 years old on the amended alleged onset date, February 1, 2009. Tr. 50, 176. Plaintiff completed the 8th grade in school and has not obtained a GED. Tr. 59. While in school, she was in special education classes for math, reading and science. Tr. 59. At age 16, her family had relocated and she decided to try to find work rather than stay in school. Tr. 63. She testified at the administrative hearing that the last time she worked was in January 2009 and she stopped working because she had no transportation and had also re-injured her back in a fall at work. Tr. 49, 52.

Plaintiff indicated her typical day starts at 6:30 or 7:00 a.m. Tr. 61. She wakes up, gets dressed and goes to the House of Charity for coffee and donuts. Tr. 61. She stays at the House of Charity until 9:30, 10:00 or 11:00 a.m., then will go to the library and spend about an hour on the computer. Tr. 61. After that, she goes to the park to lie down and sleep. Tr. 61.

Plaintiff testified she is able to sit in one spot for only 15 to 20 minutes before needing to get up and move around, could walk about two blocks in one

stretch, is able to stand about 30 minutes in one place, and is restricted to lifting less than 10 pounds. Tr. 54. She indicated she is able to take care of all of her personal needs, including dressing, showering and bathing. Tr. 60.

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2009, the amended alleged onset date. Tr. 22. The ALJ determined, at step two, that Plaintiff had the following severe impairments: lumbar and thoracic degenerative disc and joint disease; obesity; adjustment disorder with depressed mood; and borderline intellectual functioning. Tr. 22. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 23. The ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following limitations: she is not able to climb ladders, ropes, or scaffolds, but has no limitation in climbing stairs and ramps and is not limited in her ability to balance; she can frequently stoop, kneel, crouch and crawl; she is capable of performing SVP 3 level (low-end semi-skilled) tasks; and she should not have more than superficial contact with the general public. Tr. 25.

At step four, the ALJ found that Plaintiff was not able to perform her past relevant work as a fast food worker and chicken processing plant worker. Tr. 30. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 30-31. The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from February 1, 2009, the application date, through the date of the ALJ's decision, October 28, 2011. Tr. 32.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set

out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

> It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's

determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred because she is more limited from a psychological standpoint than what was determined by the ALJ. ECF No. 16 at 10. Plaintiff specifically argues that the ALJ failed to properly consider the opinion of examining physician Debra D. Brown, Ph.D., and erred by instead relying on the report of examining physician Jay M. Toews, Ed.D. ECF No. 16 at 11-14.

## DISCUSSION

Plaintiff asserts the ALJ erred by failing to properly account for her

significant psychological limitations.  ECF No. 16 at 11-14.  Plaintiff argues the ALJ erred by according weight to the opinions of Dr. Toews and by failing to provide specific and legitimate reasons for discounting the mental limitations assessed by Dr. Brown.  *Id.*

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).  Ultimately, the ALJ is "the final arbiter" who resolves ambiguities in the medical evidence.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039-1040 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

**A.    Dr. Toews**

The ALJ accorded "significant weight" to the opinions of Dr. Toews,  Tr. 29, to find Plaintiff capable of performing SVP 3 level (low-end semi-skilled) tasks, with no more than superficial contact with the general public, Tr. 25.  The undersigned finds that Plaintiff fails to demonstrate the ALJ erred by relying on

Dr. Toews' opinion with respect to Plaintiff's mental functioning abilities. *See infra*.

Dr. Toews conducted a mental status examination on March 5, 2011, and diagnosed Plaintiff with adjustment disorder with depressed mood, mild, and borderline intellectual functioning. Tr. 332-336. During the examination, Plaintiff denied emotional problems and denied any history of psychiatric problems. Tr. 332. As indicated by the ALJ, Plaintiff also did not complain of mental health issues at the administrative hearing. Tr. 28. The ALJ further noted Plaintiff had denied symptoms of depression, anxiety, mood swings, or memory loss to treatment providers and has not sought regular mental health counseling or treatment, suggesting any symptoms of alleged mental impairments are not significant. Tr. 28.

Dr. Toews described Plaintiff as a 42-year-old widowed, homeless woman, currently living in a woman's shelter. Tr. 332, 333. Plaintiff indicated to Dr. Toews that she was "fully independent for basic self-care" and "would be capable of living independently if she had the means." Tr. 333. Dr. Toews reported Plaintiff "is able to plan and prepare meals, do light house work and laundry, is able to drive and to shop independently. She gets along with neighbors, has a couple of friends she enjoys, and is able to interact with store clerks for purposes of commerce." Tr. 333. Plaintiff indicated her hobbies included outdoor activities such as horseback riding, deer hunting, camping and fishing, but she was no longer able to engage in those activities. Tr. 333.

Dr. Toews noted that Plaintiff completed the routine pre-examination information forms without difficulty and her attention and concentration were grossly intact. Tr. 333. The WAIS-IV estimated full scale IQ was 79, placing her in the borderline range. Tr. 334. Dr. Toews indicated Plaintiff functions in the higher end of the borderline range to the lower end of the low average range. Tr. 334, 335. He found no indication of any significant memory deficit or impairment

and indicated Plaintiff has relatively good verbal learning ability with above average retention ability, relates appropriately and interacts well, has a fair ability to sustain attention and concentration, has no difficulty remembering test directions and test items, and has very mild mood problems. Tr. 335. Dr. Toews opined Plaintiff was capable of remembering multi-step and moderately detailed instructions, able to perform at least repetitive types of work, capable of performing a variety of jobs consistent with physical limitations levied by physicians, and competent to manage funds. Tr. 336.

On March 22, 2011, state agency non-examining psychologist Thomas Clifford, Ph.D., reviewed the record and opined that Plaintiff's had concentration difficulties that would cause her to be moderately limited in the ability to carry out detailed instructions, but her ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain attendance and be punctual within customary tolerances, and carry out very short and simple instructions were not significantly limited. Tr. 83-85. On April 24, 2011, state agency non-examining psychologist Eugene Kester, M.D., affirmed Dr. Clifford's opinion. Tr. 108-110. These state agency reviewer opinions are consistent with Dr. Toews' report. Tr. 29.

Plaintiff contends that the ALJ erred by failing to include Dr. Toews' limitation of "fair ability to sustain attention and concentration" into the hypothetical presented to the vocational expert. ECF No. 16 at 13-14. However, it is apparent the ALJ merely interpreted Dr. Toews' attention and concentration finding to limit Plaintiff to work at the low-end of semi-skilled tasks, with no more than superficial contact with the general public. Tr. 25, 31. The undersigned finds that Dr. Toews' assessment of "fair ability to sustain attention and concentration" equates to a finding that Plaintiff's ability to sustain attention and concentration was not significantly limited. The reviewing state agency psychologists also determined Plaintiff's ability to maintain attention and concentration for extended

periods of time was not significantly limited.  *Supra*.  The conclusion that Plaintiff had the ability to maintain concentration and attention is supported not only by Dr. Toews' finding that Plaintiff had a "fair ability to sustain attention and concentration," but also by the weight of the record evidence which, as indicated by the ALJ, showed that Plaintiff's activities of daily living demonstrated an ability to maintain concentration and attention (reading and doing puzzles).  Tr. 28-29.  The ALJ did not err in this regard.

The ALJ's mental RFC determination is supported by the foregoing information, which includes Dr. Toews' report.  Accordingly, the undersigned finds that the ALJ did not err by relying on Dr. Toews' opinion to conclude that Plaintiff was restricted to the low-end of semi-skilled work, with no more than superficial contact with the general public.

**B.    Dr. Brown**

Plaintiff argues that the ALJ should have accorded greater weight to the opinions of examining medical professional Dr. Brown when assessing Plaintiff's mental RFC.  The undersigned determines that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for not according significant weight to Dr. Brown's opinions.  *See infra*.

Dr. Brown first examined Plaintiff on June 2, 2010.  Tr. 313-321.  Dr. Brown diagnosed Mild Mental Retardation (estimated onset date 7/12/1968) and gave Plaintiff a global assessment of functioning (GAF) score of 41.[1]  Tr. 315.  Dr. Brown additionally checked boxes indicating Plaintiff was markedly limited in nine out of 10 cognitive and social categories.  Tr. 316.  Dr. Brown indicated that,

---

[1] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders-IV 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

despite her impairments, Plaintiff was capable of doing "[n]othing without accommodation." Tr. 317.  On March 19, 2012, almost five months following the ALJ's determination in this case, Dr. Brown completed a second evaluation of Plaintiff.  Tr. 429-434.[2]  Dr. Brown again diagnosed Plaintiff with Mild Mental Retardation (estimated onset date 7/12/1968), gave Plaintiff a GAF score of 41, and opined that, despite her mental health impairments, Plaintiff was capable of doing "nothing."  Tr. 430-431.  Dr. Brown's two opinions are substantially similar; therefore, Dr. Brown's new report does not materially change or otherwise affect the evidence supporting the ALJ's determination in this case.

      The ALJ determined that Dr. Brown's opinion is not supported by appropriate clinical findings or the longitudinal medical record and is outweighed by substantial evidence to the contrary.  Tr. 30.  In support of this finding, the ALJ indicated that although Dr. Brown opined Plaintiff had marked limitations in social functioning, Plaintiff had not reported limitations in social functioning to Dr. Brown.  Tr. 30, 313.  To the contrary, Plaintiff reported to Dr. Brown that she spent time with other homeless people, played games with others, and spent time in often crowded places such as parks, bus stations and the House of Charity.  Tr. 30, 315.  The ALJ stated that the fact that Plaintiff went to the House of Charity, the library, and the park on a daily basis suggested she is able to maintain adequate social functioning.  Tr. 29.  As noted by Defendant, the ALJ properly determined

---

[2]This "new evidence" is part of the record for this Court's review.  *See, Harman v. Apfel*, 211 F.3d 1172, 1179-1180 (9th Cir. 2000) (the district court properly considered new evidence submitted to the Appeals Council because the Appeals Council addressed those materials in the context of denying review); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-1452 (9th Cir. 1993) (the district court appropriately reviewed all materials, including new evidence not before the ALJ, after the Appeals Council declined to accept review in light of the entire record).

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

that the discrepancy between the severity of the social limitations Dr. Brown assessed and the clinical findings on her report undermine Dr. Brown's reliability.

With respect to cognitive functioning, the ALJ specifically held that Dr. Toews' intelligence scores and borderline intellectual functioning diagnosis more closely reflected Plaintiff's intellectual functioning than Dr. Brown's diagnosis of mild mental retardation. Tr. 28. The ALJ stated that Dr. Brown's mild mental retardation assessment was not supported by the longitudinal evidence documenting the requisite deficits of adaptive functioning necessary to establish mental retardation pursuant to Listing 12.05 (Mental Retardation).[3] Tr. 28. The record reflects that Plaintiff successfully performed unskilled substantial gainful activity without any special accommodation for several years and also independently engaged in a wide range of daily activities which are not consistent with an individual functioning in the range of mental retardation. Tr. 28. The ALJ provided examples of such activities: trying to save money for a car, reading a lot, working crossword puzzles, horseback riding, and camping. Tr. 28. The ALJ further noted that Plaintiff described herself as having a history of borderline intellectual functioning, Tr. 205, but did not assert a history of mild mental

---

[3]As indicated by Defendant, the primary difference between a diagnosis of borderline intellectual functioning and mental retardation is the degree of adaptive functioning, which refers to how effectively an individual copes with common life demands and how well she meets standards of personal independence. Am. Psych. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 41-42 (4th ed. Text Revision 2000). Furthermore, "[t]he diagnosis of mental retardation requires the onset of the disorder be before age 18 years." *Id*. at 47. Inconsistent with a finding of functioning in the range of mental retardation, the record documents Plaintiff's independence in daily functioning and ability to successfully perform unskilled substantial gainful employment for several years.

1 retardation or mention having been previously diagnosed with that condition.  Tr.
2 28.  The ALJ indicates that Plaintiff's activities of daily living also demonstrated
3 an excellent ability to maintain concentration and attention (reading and doing
4 puzzles) and to make plans independently (trying to save money for a car).  Tr. 28-
5 29.  The ALJ additionally stated that Dr. Brown's mental status examination and
6 WAIS-III scores supported a finding of borderline intellectual functioning, not
7 mild mental retardation, and the results of the Trial A and B test was only in the
8 mildly impaired range.  Tr. 30, 319-321.  In fact, Plaintiff scored in the normal
9 range on the Trail Making test during Dr. Brown's later evaluation.  Tr. 433.
10 These test results are consistent with the limitations assessed by Dr. Toews.  Tr.
11 30.  The ALJ appropriately concluded that Dr. Brown's assessment of Plaintiff's
12 cognitive functioning was inconsistent with the weight of the record evidence, a
13 valid reason for discounting Dr. Brown's opinions.

   Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for not according significant evidentiary weight to Dr. Brown's evaluations.  The evidence of record does not support a more restrictive mental RFC assessment in this case.  Consequently, the ALJ's RFC determination is in accord with the weight of the record evidence and free of error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.  Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for

1 | **DEFENDANT** and the file shall be **CLOSED**.

2 | DATED October 15, 2013.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 13